# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,<br><br>**Plaintiff**,<br><br>v.<br><br>ANGIE VANGILDER, GARY VANGILDER, AND BRENDA HANDSHUMAKER,<br><br>**Defendants.** | **Case No. 15-2324-JAR-TJJ** |
| BRENDA HANDSHUMAKER,<br><br>**Plaintiff**,<br><br>v.<br><br>GARY VANGILDER,<br><br>**Defendant**,<br><br>v.<br><br>PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,<br><br>**Garnishee.** | **Case No. 15-1128-JAR-TJJ** |

## MEMORANDUM AND ORDER

This consolidated action arises out of an underlying Montgomery County, Kansas tort action involving a motor vehicle accident, for which Brenda Handshumaker obtained a consent judgment against Gary Vangilder. Progressive Northwestern Insurance Company ("Progressive") seeks to determine its rights and obligations under the motor vehicle policy at issue in the declaratory judgment action; Handshumaker seeks to collect the Montgomery County judgment from Progressive in the garnishment action. Before the Court is Progressive's

Motion for Summary Judgment (Doc. 20) on the issue of coverage. The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, summary judgment is granted in favor of Progressive.

I.  **Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim;

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[12] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14] In responding to a motion for summary judgment, "a party cannot rest on

---

[7]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Adams*, 233 F.3d at 1246.

[12]Fed. R. Civ. P. 56(c)(4).

[13]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## II. Uncontroverted Facts

The following facts are either uncontroverted or viewed in the light most favorable to the nonmoving party.

Progressive issued an insurance policy, Kansas Auto Policy No. 30188743-4, to named insured Angie Vangilder, for a policy period beginning December 1, 2010 and ending June 1, 2011 ("Policy"). Gary Vangilder is listed as an additional driver and household resident on the Declarations Page of the Policy.

Part I of the Policy provides as follows:

If **you** pay the premium for this coverage, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury** and property damage for which **an insured person** becomes legally responsible because of an accident.

. . . .

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I.[16]

The term "Insured person," in Part I includes,

(a) **you** with respect to an accident arising out of the ownership, maintenance, or use of an **auto** or **trailer**. This does not include an **auto** owned by **you** or furnished or available for **your** regular use unless it is a **covered auto**; [and]
(b) a **relative** with respect to an accident arising out of the ownership, maintenance, or use of an **auto** or **trailer**. This does not include an **auto** owned by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative** unless it is a **covered auto**.[17]

The term "Auto" means:

---

[15]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[16]Doc. 21, Ex. A-1 at 2. The bolded terms in the Policy are in the original and indicate terms that are further defined within the Policy.

[17]*Id.* at 3.

4

[A] land motor vehicle:
a. of the private passenger, pickup body, or cargo van type;
b. designed for operation principally upon public roads;
c. required to be registered and is registered
d. with at least four wheels; and
e. with a gross vehicle rating of 12,000 pounds or less, according to the manufacturer's specifications.

However, "auto" does not include step-vans, parcel delivery vans, or cargo cut-away vans or other vans with cabs separate from the cargo area.[18]

The term "covered auto" means:

a. any auto or trailer shown on the declarations page for the coverages applicable to that auto or trailer;
b. any additional auto;
c. any replacement auto; or
d. a trailer owned by you.[19]

Within Part I of the Policy is an "Other Insurance provision:

If there is any other applicable liability insurance or bond, we will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond.[20]

On or about February 5, 2011, Handshumaker's friend Jodi Berry rented a moving truck from Budget Rental so Handshumaker and Berry could move their belongings. The Budget Rental vehicle was a "Box Truck," in which the driver and passengers ride in a cab located at the front of the truck. The Box Truck featured a cargo compartment on the back for hauling items. The cargo compartment featured a door on the rear of the truck which rose up so users could access the inside of the cargo compartment. The cargo compartment in the Budget Rental Box Truck was physically separated from the cab of the truck by a wall. The Budget Rental Box Truck involved in this occurrence is similar to the one-ton Box Truck available for rent as

---

[18]*Id.* at 1.

[19]*Id.*

[20]*Id.* at 5.

depicted on the Budget Rental website. The Budget Rental Box Truck used on the day of the accident was not a cargo van or a pickup truck.

On or about February 5, 2011, Gary Vangilder was operating the Budget Rental Box Truck on a residential driveway in Coffeyville, Kansas. The Box Truck was stuck in snow, so Handshumaker and Berry were trying to push the moving Box Truck out of the snow. Handshumaker was positioned on the passenger side of the Box Truck, near the rear wheels, as she was physically pushing the moving truck with her hands to try and free the Box Truck from the snow. As Handshumaker was pushing the Box Truck with her hands, Vangilder was in the cab of the Box Truck, with the motor running, pressing the accelerator pedal in furtherance of their effort to dislodge the Box Truck from the snow. Vangilder finally was able to back up the truck, and turned the steering wheel, causing the truck to move toward Handshumaker; he was "gunning" the engine of the truck when it struck Plaintiff, injuring her right leg. She developed compartment syndrome in her leg and had two operations as a result of her injuries. Handshumaker also developed an infection and was required to take five to six months off of work.

Handshumaker presented a claim to Progressive under the Policy for her injuries sustained when the Budget Rental Box Truck operated by Vangilder backed over her right leg. Progressive denied coverage on the basis that the Budget Rental Box Truck involved in the accident was not included in the definition of "auto" in the policy. It also declined to defend.

At the time she rented the Box Truck, Berry purchased an insurance policy which provided $25,000 in liability coverage. At the consent judgment hearing in the Montgomery County case, Budget Rental tendered its $25,000 policy limits to Handshumaker, which she accepted. On February 2, 2015, the Montgomery County trial court entered a judgment in the
6

amount of $300,000 in favor of Handshumaker against Mr. Vangilder, reduced by 25% for comparative fault to $225,000. Handshumaker seeks to recover this sum from Progressive in this consolidated action, claiming that Progressive acted in bad faith by refusing to defend or pay its policy limits in settlement of this claim.

## III. Discussion

Progressive moves for summary judgment on the issue of coverage, arguing that under the plain terms of its Policy, it owed no coverage for the Budget rental vehicle involved in the accident. Under Kansas law, "if the language of the insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the senses and meaning of the terms used."[21] And the Court "should not strain to create an ambiguity where, in common sense, there is none."[22] The Court is to consider the terms of an insurance policy as a whole, taking care not to fragment the various provisions and endorsements.[23] An insurer has a "duty to define limitations to an insured's coverage in clear and explicit terms. To restrict or limit coverage, an insurer must use clear and unambiguous language. Otherwise, the insurance policy will be construed in favor of the insured."[24] When an insurance contract is not ambiguous, the Court enforces the contract as it is written, so long as it does not conflict with any applicable statute or violate public policy.[25] And if a contract is clear and unambiguous, "there is no room for rules of construction."[26]

---

[21]*Kemper Ins. Cos. v. Weber*, 168 P.3d 607, 610 (Kan. Ct. App. 2007). The parties agree that Kansas law applies to this insurance dispute.

[22]*First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998).

[23]*Iron Horse Auto, Inc. v. Lititz Mut. Ins. Co.*, 156 P.3d 1221, 1226–26 (Kan. 2007); *Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003).

[24]*Weber*, 168 P.3d at 611 (citations omitted); *see also Crist v. Hunan Palace, Inc.*, 89 P.3d 573, 577 (Kan. 2004).

[25]*Marshall*, 73 P.3d at 132; *Levier v. Koppenheffer*, 879 P.2d 40, 45 (Kan. Ct. App. 1994).

[26]*See, e.g.*, *Decatur Cnty. Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 574 (Kan. 1999) (quoting *Simon v. Nat'l*

7

Progressive spends its initial brief explaining that, under the definitions set forth in the Policy, the Budget rental vehicle was not an "auto," and therefore it properly denied coverage to Handshumaker. Handshumaker responds that the "Other Insurance" provision of the Policy applies here since her accident was also covered by the Budget Rental policy, and that the Other Insurance provision applies to any "vehicle or trailer, other than the covered auto." Alternatively, Handshumaker argues that the Other Insurance provision is ambiguous and should therefore be construed in favor of coverage.

Part I of the Policy provides coverage for bodily injury "for which an insured person becomes legally responsible because of an accident." An insured person under the Policy includes "you" or a "relative," with respect to the use of an "auto." But an insured person does not include you or a relative using "an auto owned by you or furnished or available for your regular use unless it is a covered auto." There can be no dispute that the term "auto" in the Policy clearly and explicitly excludes cargo cutaway vans, or vans with cabs separate from the cargo area. There is also no dispute that the Budget Rental Box Truck qualifies as a van with a cab that is separate from the cargo area and therefore it does not meet the definition of "auto" under the Policy. The Court finds that the clear and unambiguous terms of the Policy demonstrate that Mr. Valgilder was not an insured person under Part I of the Policy because he was not using or operating a covered auto.

Handshumaker suggests that it does not matter that the Budget Rental Box Truck does not meet the definition of auto because the Other Insurance provision of the Policy applies here and expands coverage to all "vehicles," even if they are not covered autos. Handshumaker argues that the provision is at least ambiguous and should therefore be construed in favor of

---

*Farmers Org., Inc.*, 829 P.2d 884, 888 (Kan. 1992)).

coverage. The Court disagrees with this reading of the Other Insurance provision. That provision, which is located within Part I of the Policy, provides that if there is other applicable insurance, Progressive will only pay "our share of the damages," which is "the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle or trailer, other than a covered auto, will be excess over any other collectible insurance, self-insurance, or bond." The Court reads the Policy as a whole, as it must, and finds that this Other Insurance provision does not provide an independent basis for coverage where the Policy otherwise disclaims coverage in the same part.[27] As Progressive correctly explains, the Other Insurance provision merely sets forth priority when there is more than one policy that provides coverage for a loss.[28] Priority only comes into play where two or more policies provide coverage.[29] As explained above, the plain terms of the Progressive Policy do not provide coverage for bodily injury unless an "insured person becomes legally responsible because of an accident." Mr. Vangilder is not an insured person under the Policy because he was using a vehicle that does not meet the definition of "auto" under the plain terms of the Policy. Reading the Other Insurance provision along with the coverage provisions in Part I, the Court finds no ambiguity that the Budget Rental Box Truck was not covered by the Policy.

**IT IS THEREFORE ORDERED BY THE COURT** that Progressive's Motion for Summary Judgment (Doc. 20) is **granted**.

---

[27]*Accord Nat'l Farmers Union Prop. & Cas. Co. v. Biesma*, No. CIV 12-4146, 2013 WL 3542343, at *4 (D.S.D. 2013).

[28]*See, e.g.*, *Narron v. Cincinnati Ins. Co.*, 97 P.3d 1942, 1048 (Kan. 2004); *Cain v. Goodville Mut. Cas. Co.*, 108 P.3d 468 (table), 2005 WL 697462, at *2 (Kan. Ct. App. Mar. 25, 2005) ("Other insurance clauses establish priority as to which policy should be exhausted first when there is more than one policy that provides coverage for a loss.").

[29]Handshumaker's reliance on *Farm Bureau Mutual Insurance Co. v. Enterprise Leasing Co.*, 58 P.3d 751 (Kan. Ct. App. 2002), is misplaced. In that case, the central dispute was whether the driver's insurance policy or the rental company's insurance policy provided primary or excess coverage under an Other Insurance provision. There was no question that the policy covered the vehicle in question in the first place. *Id.* at 754–55.

**IT IS SO ORDERED.**

Dated: February 4, 2016

                                             S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            UNITED STATES DISTRICT JUDGE